UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MABEL LAURA ABRAHAM

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

Case No. 18-12422

Laurie J. Michelson
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13, 14)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On August 5, 2018, plaintiff Mabel Laura Abraham filed the instant suit. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Laurie J. Michelson referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying Abraham disability benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkts. 13, 14). Abraham also filed a reply in support of her motion for summary judgment. (Dkt. 15).

B.    <u>Administrative Proceedings</u>

On May 2, 2016, Abraham filed an application for period of disability and disability insurance benefits, alleging disability beginning on April 13, 2016.  (Tr. 16).[1]  Abraham's claim was initially denied on June 20, 2016.  (Tr. 16).  She requested a hearing and appeared on January 8, 2018 before Administrative Law Judge ("ALJ") Roy E. LaRoche, Jr.  (Tr. 31-65).  In a decision dated February 5, 2018, the ALJ found that Abraham was not disabled.  (Tr. 13-26).  Abraham requested a review of this decision and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied her request for review on June 4, 2018.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that the Court **DENY** plaintiff's motion for summary judgment, **GRANT** defendant's motion for summary judgment, and **AFFIRM** the findings of the Commissioner.

## II.    FACTUAL BACKGROUND

A.    <u>ALJ Findings</u>

Abraham was born in 1969 and was 46 years old on the alleged disability onset date.  (Tr. 24).  She has a seventh-grade education and past relevant work as

---

[1] The Administrative Record appears on the docket at entry number 9.  All references to the same are identified as "Tr."

an order picker and a stock clerk.  (Tr. 24, 48).  Abraham lives with her fiancé and adult son.  (Tr. 44-45).  She stopped working in April 2016 because of her arthritis, bone degeneration, bone spurs, and kidney stones.  (Tr. 214).

The ALJ applied the five-step disability analysis to Abraham's claims and found at step one that she did not engage in any substantial gainful activity since the alleged onset date.  (Tr. 18).  At step two, the ALJ found that Abraham had the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, asthma, bilateral carpal tunnel syndrome, and obesity.  *Id*.  At step three, the ALJ found that Abraham did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations.  (Tr. 19-20).  The ALJ determined that Abraham has the residual functional capacity (RFC) to perform a limited range of sedentary work

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: require the use of a handheld assistive device for ambulation but can use the contra arm to carry items up to five pounds; would require the ability to stand for five to ten minutes after every forty-five minutes of sitting; occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl but no climbing of ladders, ropes, or scaffolds; occasional exposure to concentrated levels of' atmospheric conditions; perform frequent reaching with the bilateral upper extremities in all directions; frequent handling and fingering with the bilateral upper extremities; and no work around unprotected heights or moving mechanical machinery.

(Tr. 20).  At step four, the ALJ determined that Abraham could not perform any past relevant work.  (Tr. 23-24).  At step five, the ALJ concluded that there were a significant number of jobs that Abraham could perform in the national economy and thus, she was not under a disability from the alleged onset date through the date of the decision.  (Tr. 25).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If a claimant does not obtain relief during the7 administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a

determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.

*Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental

7

> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  *Id*.  "If the Commissioner makes a dispositive finding at any

point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

1.      Treating physician opinions

Abraham first asserts that the ALJ improperly gave partial weight to the opinions of her treating physician, Dr. Thwainey.  According to Abraham, the ALJ's citation to conflicting evidence fails to mention any significant objective test results, which demonstrate the severity of her condition.  Specifically, Abraham had a lumbar spine MRI in February 2016, which showed a right paracentral disc protrusion resulting in severe stenosis at L4-L5, as well as multilevel neural foraminal narrowing.  (Tr. 410-411).  Disc material contacted the exiting nerve root at L4, and a disc protrusion at L5-S1 displaced the S1 nerve root.  (Tr. 410-411).  Additionally, an EMG performed in February 2016 revealed evidence of right L5 radiculopathy (Tr. 409), and a repeat EMG in January 2017 showed

bilateral L5 radiculopathy.  (Tr. 445-446).  Abraham maintains that these objective diagnostic studies support her testimony of severe back and leg pain, which causes her to lie down several times a day.

Abraham suggests that the ALJ improperly discounted or rejected every opinion in this record and instead, crafted limitations on his own.  She posits that the ALJ's analysis does not obviate the need for an expert opinion, because the medical records documenting plaintiff's impairments do not lend themselves to "neat lay interpretation," *Choate v. Comm'r of Soc. Sec.*, 2018 WL 1354471, at *11 (E.D. Mich. Feb. 24, 2018), report and recommendation adopted, 2018 WL 1326293 (E.D. Mich. Mar. 15, 2018), nor were they "clear" and "undisputed," *Wyatt v. Comm'r of Soc. Sec.*, 2013 WL 4483074, *16-17 (E.D. Mich. August 19, 2013).  Rather, Abraham argues that the medical sources, particularly treating Dr. Thwainey's opinions, undisputedly indicated that a more limited RFC was appropriate and, as a result, the ALJ should not have made his own independent findings as to her RFC.

In response, the Commissioner argues that the ALJ supportably explained that he gave partial weight to Dr. Thwainey's opinion because it was partially consistent with the objective evidence.  (Tr. 23).  The ALJ noted that evidence showing reduced range of motion with decreased strength, diminished sensation, and antalgic gait at times supported the postural limitations Dr. Thwainey assessed,

but that evidence often showing normal strength and extremities, intact sensation, and normal gait did not support Dr. Thwainey's sitting, standing, and walking limitations. (Tr. 23 (citing 310, 313, 321, 382, 388, 449, 458, 499, 527, 626, 646, 650)).  According to the Commissioner, Abraham's sole challenge to this analysis is her contention that the ALJ failed to consider her February 2016 MRI or February 2016 and January 2017 EMGs.  (P. mem. 13-14 (citing Tr. 409-11, 445-46)).  But the Commissioner points out that the ALJ detailed the November 2015 lumbar x-ray, the February 2016 MRI, and the February 2016 and January 2017 EMGs in discussing the medical evidence.  (Tr. 21-22 (citing Tr. 409, 411, 440)). The Commissioner argues that these images do not show any particular functional limitations.  *See Flowers v. Comm'r of Soc. Sec.*, 2015 WL 4274961, at *4 (E.D. Mich. July 14, 2015) ("[T]he MRI . . . reports provide no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein. Moreover, Plaintiff does not provide any such insight in his argument to the Court."); *Kamphaus v. Comm'r of Soc. Sec.*, 2015 WL 12672748, at *9 (E.D. Mich. June 22, 2015) (rejecting the contention that an MRI was material to an ALJ's decision because there was no medical evidence to show greater functional limitations based on the MRI results), rep. & rec. adopted, 2015 WL 5731839 (E.D. Mich. Sept. 30, 2015).

The Commissioner also contends that the ALJ properly noted that many examination findings did not support the extreme sitting, standing, and walking limitations Dr. Thwainey assessed.  (Tr. 23; Tr. 507-17).  Dr. Thwainey consistently observed normal strength and sensation from January through August 2017, when he gave his opinion.  (Tr. 527, 531, 535, 539, 543, 547, 551, 626, 634).  Moreover, from April through December 2016, Dr. Garg consistently observed normal posture and gait; normal sensation; intact reflexes; and normal coordination, strength, and tone in all extremities.  (Tr. 382-83, 385-86, 388, 449, 452-53, 455-56, 458-59, 461-62, 464-65, 467-68, 470-71).  And Dr. Samuel consistently observed normal gait and station from August through November 2017.  (Tr. 712, 717, 721, 725).  Accordingly, the Commissioner maintains that the ALJ reasonably discounted Dr. Thwainey's opinion based on this inconsistency.

The Commissioner next points out that Abraham's argument that the ALJ erred in assessing her RFC "without the assistance of a medical source," has been rejected by the Sixth Circuit.  *See e.g.*, *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 Fed. Appx. 395, 401 (6th Cir. 2018); *Shepard v. Comm'r of Soc. Sec.*, 705 Fed. Appx. 435, 442 (6th Cir. 2017).  Contrary to Abraham's position, the Commissioner emphasizes that it is the ALJ's responsibility to determine the RFC. *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013).  The Commissioner says the ALJ did not lack input from a medical source here, given

that he assessed partial weight to Dr. Thwainey's opinion. *See Norgren v. Comm'r of Soc. Sec.*, 2015 WL 5026173, at *11 n.14 (E.D. Mich. Aug. 25, 2015) (distinguishing *Wyatt* where the ALJ "utilized the information gained from the medical source, while giving aspects of it appropriate, relative weight in light of" other evidence in the record).

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight accorded to the opinion. The reasons provided must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. *Id.*; *see also Wilson,* 378 F.3d at 544; 20

C.F.R. § 404.1527(c).  Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight.  *Gayheart* at 376-77.

Abraham's treating physician, Dr. Thwainey provided a medical source statement on August 22, 2017.  (Tr. 507-517).  He opined that Abraham could occasionally lift up to 10 pounds, but never carry any weight.  He said she could sit for one hour without interruption, stand for 15 minutes without interruption, and walk for five minutes without interruption.  He also opined that she could only sit, stand, and walk for one hour each in an eight-hour work day.  Dr. Thwainey found that Abraham required a cane to ambulate and that she could not walk at all without a cane.  He indicated that she was limited to occasional reaching, handling, fingering, feeling, and pushing/pulling and occasional operation of foot controls. Dr. Thwainey also found that Abraham occasionally could climb stairs/ramps, balance, stoop and kneel, but could never climb ladders or scaffolds, crouch, or crawl.  Dr. Thwainey opined that she could never work near unprotected heights, moving mechanical parts, or dust/odors fumes, and pulmonary irritants but she could occasionally operate a motor vehicle, be exposed to humidity/wetness, extreme cold, extreme heat, and vibrations and could tolerate moderate noise. Finally, Dr. Thwainey indicated that Abraham could not shop, travel without a companion, ambulate without using a wheelchair, walker, or two canes or two

14

crutches, walk a block at a reasonable pace on rough or uneven surfaces, use public transportation, or climb a few steps at a reasonable pace with the use of single hand rail. *Id*.

> The ALJ analyzed Dr. Thwainey's opinion as follows:

> > The undersigned has considered the opinion of Dr. Thwainey, and affords it partial weight, as it is partially consistent with the overall evidence of record. Significantly, his assessed occasional postural activities and no climbing of ladders and scaffolds is supported by examinations indicating lumbar tenderness, reduced range of motion, decreased strength, diminished sensation, and an antalgic gait with the use of a cane (3F/7; 5F/5; 7F/3; 8F/3; 10F/37; 13F/3; 13F/11; 14F/24; 16F/3). However, Dr. Thwainey's assessment that the claimant could only sit, stand or walk for one hour each in a day is not consistent with other findings showing that, at times, the claimant had normal strength, full range of motion, normal extremities, and intact sensation (2F/11; 2F/14; 3F/7; SF/5; SF/11; 7F/3; 8F/3; 8F/12; 9F/19; 10F/25; 14F/4; 14F/24; 14F/28). Moreover, treatment notes often indicated the claimant had a normal gait without the use of an assistive device (5F/5; 5F/11; 8F/3; 8F/12; 9F/19; 15F/16; 16F/15). Accordingly, the undersigned gives partial weight to the opinion of Dr. Thwainey.

(Tr. 23).

The undersigned concludes that the ALJ's analysis provides substantial evidence to support his conclusion that Dr. Thwainey's opinions are entitled to partial weight. The ALJ's conclusion that Dr. Thwainey's opinions regarding her sitting, standing, and walking limitations is contradicted by the record is well-

supported.  The record is replete with references to Abraham's normal strength, sensation, gait, and reflexes, although positive Babinski was sometimes, but not always, reported.  (Tr. 302, 12/13/14; Tr. 305, 12/30/14; Tr. 307, 2/7/15; Tr. 310, 6/11/15; Tr. 313, 11/8/15; Tr. 318, 12/1/15; Tr. 393, 2/4/16; Tr. 391, 2/22/16; Tr. 321, 3/14/16; Tr. 324, 3/21/16; Tr. 479-480, 4/7/16; Tr. 523, 4/16/16; Tr. 476, 5/5/16; Tr. 473-474, 6/3/16; Tr. 469-470, 7/1/16; Tr. 467-468, 7/13/16; Tr. 464, 7/29/16; Tr. 461, 8/26/16; Tr. 458, 9/30/16; Tr. 455-456, 10/27/16; Tr. 452, 11/25/16; Tr. 449, 12/12/16).  In January 2017, Abraham had give-away weakness in her lower extremities, slightly decreased vibratory sensation in her lower extremities, along with antalgic gait.  (Tr. 438, 443).  Later in January 2017, her strength was reduced due to pain inhibition, she was able to ambulate without a cane, she had no atrophy, and her reflexes were symmetrical.  (Tr. 499) (but see, Tr. 634, 1/10/17; Tr. 527, 2/1/17; Tr. 531, 3/10/17; Tr. 535, 4/15/17; Tr. 626, 4/2/17; Tr. 539, 5/16/17; Tr. 543, 7/13/17; Tr. 646, 7/27/17; Tr. 551, 8/10/17, all reporting normal strength, sensation, and reflexes).  In February 2017, she was noted to be using a one-point cane, her strength was 5/5 in her lower extremities, straight-leg raising was negative, and her sensory exam was intact in her lower extremities.  (Tr. 590).  Accordingly, the undersigned finds that very little in Dr. Thwainey's treatment notes and other evidence in the record supports his extreme sitting, standing, and walking limitations.  Moreover, there is little evidence in the

record to suggest, as Dr. Thwainey opined, that Abramson could not ambulate without a cane. As the ALJ observed, Abramson was often noted to not be using a cane, and even her regular use of a single-point cane does not support Dr. Thwainey's opinion that she was unable to ambulate without using a wheelchair, walker, or two canes or two crutches.

The foregoing recitation of items in the record provides substantial evidence in support of the ALJ's decision to give Dr. Thwainey's opinions only partial weight. Even if substantial evidence exists suggesting otherwise, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Moreover, the diagnostic testing on which Abraham relies to support Dr. Thwainey's opinions merely shows that she suffers from severe impairments, as found by the ALJ. *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The mere fact that plaintiff suffered from a dysthymic disorder ... does not automatically entitle plaintiff to the receipt of benefits. Rather, in order to qualify for the receipt of benefits ... plaintiff must show that she was disabled by her dysthymic disorder."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). Thus, while the various diagnostic

tests cited by Abraham support her diagnoses, they do not buttress Dr. Thwainey's opinion as to her functional limitations. *See Flowers v. Comm'r of Soc. Sec.*, 2015 WL 4274961, at *4 (E.D. Mich. July 14, 2015) ("[T]he MRI . . . reports provide no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein. Moreover, Plaintiff does not provide any such insight in his argument to the Court."); *Kamphaus v. Comm'r of Soc. Sec.*, 2015 WL 12672748, at *9 (E.D. Mich. June 22, 2015) (rejecting the contention that an MRI was material to an ALJ's decision because there was no medical evidence to show greater functional limitations based on the MRI results), rep. & rec. adopted, 2015 WL 5731839 (E.D. Mich. Sept. 30, 2015).

Finally, as the Commissioner points out, the Sixth Circuit has recently and consistently rejected the notion that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 Fed. Appx. 395, 401-02 (6th Cir. 2018) (citing *Shepard v. Comm'r of Soc. Sec.*, 705 Fed. Appx. 435, 442-43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity] lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the [residual

functional capacity] based on her evaluation of the medical and non-medical evidence"); *see also Stokes v. Comm'r of Soc. Sec,* 769 Fed. App'x 298 (6th Cir. 2019) (adopting without restating district court's conclusion that no medical opinion supporting RFC was necessary).  Pursuant to 20 C.F.R. § 404.1527(d), the final responsibility for deciding issues such as the claimant's residual functional capacity is reserved to the Commissioner.  Cohering with the above-cited cases are decisions recognizing that "[a]lthough the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec*., 342 Fed. Appx. 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).  There is also support for the proposition that an ALJ improperly assumes the role of doctor if he forms an RFC without a medical opinion *and* solely bases it on the ALJ's own interpretation of raw medical evidence. Regardless of whether that rationale survives scrutiny in light of the recent spate of unpublished appellate opinions holding that the ALJ needn't rely on an expert opinion, that is not the case here. *Gross v. Comm'r of Soc. Sec*., 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017).  Rather, the ALJ evaluated the opinions of Dr.

Thwainey and Dr. Garg, determined the extent to which they were supported by the record, and formulated the RFC.  The undersigned finds no error.[2]

### 2.    Carpel-tunnel syndrome related limitations

While the ALJ found that plaintiff's carpal tunnel syndrome was a severe impairment, Abraham asserts that he unfairly minimized her testimony as to the severity of that condition:

> In August 2017, the claimant had tenderness of the bilateral wrists with positive carpal compression, Phalen's and Tinel's testing, decreased sensation, positive straight leg raising, and an antalgic gait (13F 11: 16F/3). An EMG revealed bilateral carpal tunnel syndrome, and the claimant was advised to use wrist braces (16F7; 16F18).  However, that same month it was noted that the claimant had normal strength, intact sensation, and was not using a cane (14F/28; 15F/16). In November 2017, she was observed to have a normal gait and station (16F/15). These findings are consistent with the reduced sedentary residual functional capacity assessed in this decision.

(Tr. 22).  Abraham points out that the ALJ's analysis above is not entirely about Her carpal tunnel syndrome and does not explain the basis for the ALJ's

---

[2] The Commissioner asserts that Abraham's citation to *Choate* is inapposite because that case involved a remand for failure to obtain a medical opinion on equivalency at step three. (Dkt. 14, p. 10, n. 2).  Abraham has not expressly raised a step three error and to the extent that Abraham's argument suggests that the ALJ erred by not obtaining a medical opinion on equivalence to support the Step 3 analysis, the undersigned points out that such a requirement no longer existed when the ALJ issued his decision in this case, on February 5, 2018.  SSR 17-2p, 2017 WL 3928306, *4 (Mar. 27, 2017) provides that an ALJ need not obtain evidence from a medical expert on equivalence if the ALJ believes the "evidence does not reasonably support a finding that the individual's impairment(s) medically equals a  listed impairment."

findings.  For example, some of the findings noted – not using a cane, normal gait and station, etc. – relate to Abraham's back and legs, not her wrists, hands, and arms.  According to Abraham, the reference to normal strength and intact sensation found on Tr. 650 does not specify the part of the body it is discussing.  Moreover, the ALJ's analysis did not account for the numerous positive, objective examination findings – positive carpal compression, Phalen's and Tinel's signs, and decreased sensation (Tr. 713) – and EMG results positive for bilateral carpal tunnel syndrome and right cubital tunnel syndrome.  (Tr. 717, 727-728).  Abraham maintains that this deficiency is significant because the VE testified that, if Abraham was limited to occasional fingering and handling as Dr. Thwainey suggested (Tr. 511), she would not be capable of employment.  (Tr. 62-63).  Furthermore, while the ALJ concluded that her treatment was merely conservative and did not include physical therapy, injections, nerve blocks, or surgery (Tr. 23), Abraham points out that she did have an injection into her carpal canal (Tr. 721) and she testified at the hearing that carpal tunnel surgery was impending, based on her doctor's recommendation, a fact the ALJ neglected to mention.  (Tr. 38-39, 725).

In response, the Commissioner argues that Abraham's lead argument merely quotes a small portion of the ALJ's discussion of the medical records, and nothing in the ALJ's decision suggests that he was limiting this paragraph to discussion of

carpal tunnel syndrome.  Rather, according to the Commissioner, he recited the

medical evidence from the relevant period collectively to explain the basis for the

entire RFC finding.  (Tr. 21-22).  More significantly, the Commissioner argues that

Abraham fails to identify any additional limitations stemming from her carpal

tunnel syndrome.  *See Turvey v. Comm'r of Soc. Sec.*, 2013 WL 3271194, at *5

(E.D. Mich. June 27, 2013) ("Plaintiff does not specify any additional work-related

functional limitations the ALJ should have, but did not, include in the RFC

assessment resulting from his pain or mental impairments.").  While she highlights

positive carpal compression, Phalen's, Tinel's, and EMG results, this evidence

simply confirms that Abraham had carpal tunnel syndrome, which the ALJ found

was a severe impairment.  (Tr. 18).  The Commissioner points out that despite this

impairment, Abraham retained normal strength and range of motion and intact

coordination in her upper extremities throughout the entire period.  (Tr. 382, 385,

388, 438, 443, 449, 452-53, 455-56, 458-59, 461-62, 464-65, 467-68, 470-71, 531,

535, 539, 543, 547, 551, 626, 634, 713, 717, 721, 725).  The Commissioner also

argues that the ALJ appropriately acknowledged that Abraham treated her

impairments – degenerative disc disease and carpal tunnel syndrome – with

medication and injections, but that she had not received more significant treatment,

including continued physical therapy, a TENS unit, nerve blocks, or surgery.  (Tr.

23); *Bentley v. Comm'r of Soc. Sec.*, 23 Fed. Appx. 434, 435 (6th Cir. 2001) (reasoning that the ALJ could rely on the plaintiff's conservative treatment in finding that his subjective complaints were not entirely credible). And, the prospect of surgery does not suggest any specific functional limitations, particularly where Dr. Samuel's treatment notes showed normal strength and range of motion in the upper extremities. (Tr. 713, 717, 721, 725). The Commissioner also points out that even if Abraham had carpal tunnel surgery after the ALJ issued his decision, the ALJ gave several other reasons for discounting her subjective complaints, (Tr. 22), and she has not challenged that analysis.

Other than Dr. Thwainey's opinions, there is little support in this record for limitations based on Abraham's carpel tunnel syndrome, greater than those found by the ALJ. And, as discussed above, the ALJ's decision to give this opinion only partial weight is supported by substantial evidence. While Abraham points to positive signs supporting her carpal tunnel diagnosis, she does not explain how this translates into any requirement for additional limitations. As the Commissioner points out above, the record contains ample evidence showing that Abraham had normal strength and range of motion and intact coordination in her upper extremities throughout the entire period under review. Again, while there is no question that Abraham suffers from carpel tunnel syndrome, the mere presence of this diagnosis does little to inform her functional limitations, particularly

considering the extensive normal findings in the record relating to functionality. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). Accordingly, the undersigned finds no basis to disturb the ALJ's findings in this regard.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Court **DENY** plaintiff's motion for summary judgment, **GRANT** defendant's motion for summary judgment, and **AFFIRM** the findings of the Commissioner.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 17, 2019          s/Stephanie Dawkins Davis
                               Stephanie Dawkins Davis
                               United States Magistrate Judge