UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MABEL LAURA ABRAHAM,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 2:18-cv-12422-LJM-SDD
Honorable Laurie J. Michelson
Magistrate Judge Stephanie Dawkins Davis

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION [17], GRANTING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT [14], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13]**

In 2016 and 2017, perhaps earlier, Mabel Abraham suffered from a slipped vertebra in her lumbar spine and carpal-tunnel syndrome. These and other medical conditions made it hard for Abraham to work full time. So she applied for disability benefits from the Social Security Administration. The Commissioner of Social Security denied Abraham's application, finding that she was not disabled as that term is used in the Social Security Act. Abraham then filed this lawsuit, challenging the Commissioner's disability determination. Magistrate Judge Stephanie Dawkins Davis, to whom all pretrial matters were referred, recommends affirming the Commissioner's decision. Abraham objects to that recommendation. As will be explained, the Court will overrule Abraham's objection and accept the Magistrate Judge's recommendation to affirm the Commissioner's disability determination.

# I.

## A.

Abraham's low-back issues and carpal-tunnel syndrome are the primary reasons she sought disability insurance benefits.

In late 2015 and early 2016, imaging studies revealed issues in Abraham's lumbar spine. An X-ray showed grade 1 spondylolisthesis at the L4 and L5 vertebrae (i.e., a minimally-slipped vertebrae) and an MRI showed "severe spinal stenosis and crowding of the cauda equina nerve roots" at L4/L5 (i.e., crowding or pinching of the nerves that branch off the spinal cord). (PageID.370, 445.)[1] In January 2017, an electromyography (EMG) study revealed "evidence of bilateral L5-S1 radiculopathy" (i.e., pinching of a nerve root); the study did not, however, reveal any "peripheral neuropathy" (i.e., symptoms due to nerve damage in the extremities). At a post-EMG follow-up exam, a physician noted, "Patient reports tightness in her back that radiates into her buttocks and into her legs bilaterally for the past 1.5 years. She states it is getting worse. She states walking makes the pain worse. She denies anything that makes it better." (PageID.472.) But Abraham had not yet tried physical therapy or injections. (PageID.534.)

In 2017, Abraham regularly saw Dr. Bassam Thwainey, a family medicine practitioner, and received four epidural steroid injections in her lower spine. Dr. Thwainey's treatment notes reflect that during most (if not all) office visits, Abraham's lower spine was painful and that she had a reduced range of motion. (PageID.563, 567, 571, 674, 678, 684, 688.) Dr. Thwainey typically prescribed Norco for pain and Flexeril as a muscle relaxant; at one point, Dr. Thwainey planned for a specialist to evaluate marijuana for Abraham's pain. (PageID.563, 567, 571, 674, 678, 684,

---

[1] Unless indicated otherwise, all PageID citations are to ECF No. 9, which is the administrative record.

688.) As for the epidural steroid injections, they provided varying degrees of relief. The first injection only relieved pain for about a week. (PageID.753.) But the second gave Abraham relief for about one-and-half months and, during that time, "[s]he was more active and able to do her cleaning stuff." (PageID.597.) Ultimately, Abraham's pain returned to the nine-out-of-ten level, so injections continued at approximately 90-day intervals. (PageID.66, 600, 641, 629.) Abraham also sometimes used a cane to walk in 2017. (*See, e.g.*, PageID.470, 632.) In August 2017, Dr. Thwainey completed a medical source statement indicating that during an eight-hour workday, Abraham could only sit for one hour, stand for one hour, and walk for one hour (apparently, he thought Abraham would need to lie down the other five hours). (PageID.545.)

In August 2017, Abraham began seeing Dr. Samson Samuel for carpal-tunnel syndrome in both wrists. (PageID.750, 753.) In October 2017, Dr. Samuel gave Abraham a steroid injection in her right wrist. (PageID.760.) At her January 2018 disability hearing, Abraham testified that carpal-tunnel release surgery was scheduled for later that week. (PageID.65–66.)

**B.**

With that summary of Abraham's medical history in place, the Court briefly summarizes the procedural history of this case.

In 2016, Abraham filed an application for disability benefits from the Social Security Administration alleging that she became unable to work in April 2016.

In time, an Administrative Law Judge, acting on behalf of the Commissioner of Social Security, reviewed Abraham's medical records and listened to testimony about her impairments. In February 2018, the ALJ rendered a decision as to Abraham's ability to work full time. In so doing, the ALJ found that the opinion of Abraham's primary-care physician, Dr. Thwainey, was only entitled to "partial weight." (PageID.50.) The ALJ thought that Dr. Thwainey's opinions

about how long Abraham could sit, stand, and walk during a workday were "not consistent" with Abraham's treatment records. (*Id.*) And perhaps referring to Dr. Thwainey's opinion that Abraham required a cane to walk, the ALJ stated, "treatment notes often indicated the claimant had a normal gait without the use of an assistive device." (*Id.*) The ALJ ultimately found that Abraham was not "disabled" as that term is used in the Social Security Act. (PageID.53.)

After further administrative proceedings proved unsuccessful, Abraham filed a complaint in federal court. In time, Abraham and the Commissioner each filed a motion for summary judgment. In her summary-judgment brief, Abraham argued that the ALJ did not properly comply with the treating-source rule in assigning Dr. Thwainey's opinion only "partial weight." (ECF No. 13, PageID.791–792.) (As will be discussed, it is not clear whether Abraham meant that the ALJ did not comply with the substantive prong or did not comply with the procedural prong of that rule.) Abraham also argued that the ALJ did not adequately account for her carpal tunnel-related limitations. (ECF No. 13, PageID.795.)

Pursuant to E.D. Mich. LR 72.1(b)(3), all pretrial matters in social security appeals are referred to a magistrate judge.

Magistrate Judge Stephanie Dawkins Davis recommends affirming the ALJ's determination that Abraham was not disabled under the Act. After citing numerous medical records, the Magistrate Judge concluded that "the record provides substantial evidence in support of the ALJ's decision to give Dr. Thwainey's opinions only partial weight." (ECF No. 16, PageID.842.) The Magistrate Judge further found that "[o]ther than Dr. Thwainey's opinions, there is little support in this record for limitations based on Abraham's carpal tunnel syndrome, greater than those found by the ALJ." (ECF No. 16, PageID.848.)

Abraham now objects. (ECF No. 17.)

4

**II.**

When, as here, a party files an objection to a magistrate judge's report and recommendation, this Court addresses anew those issues raised by the objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

In conducting *de novo* review in this case, the Court must affirm a finding by the ALJ if it is both supported by substantial evidence and complies with the procedural rules governing disability determinations. *See Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**III.**

Abraham's single objection attacks the Magistrate Judge's finding that the ALJ complied with the treating-source rule.

To better understand Abraham's objection, it helps to take a few procedural steps back to her summary-judgment briefing. There, she—in a single paragraph—cited both prongs of the treating-source rule: (1) that a treating-source opinion is entitled to controlling weight if it is well supported and not contrary to significant record evidence and (2) an ALJ has a duty to explain, i.e., provide "good reasons," for whatever weight he assigns a treating-source opinion. (ECF No. 13, PageID.791–792); *see also Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017). Then, after reciting both prongs, Abraham said, "The ALJ's opinion clearly fail[ed] to meet *this* standard[.]" (ECF No. 13, PageID.792.) But which? Prong one or two? Both?

The Magistrate Judge thought that Abraham was arguing that the ALJ did not comply with prong one—i.e., that the ALJ's assignment of partial weight to Dr. Thwainey's opinion was not supported by substantial evidence. And with that interpretation of Abraham's argument, the Magistrate Judge went on to cite numerous records that she thought cut against Dr. Thwainey's opinion. (ECF No. 16, PageID.841.) She then concluded, "The foregoing recitation of items in the

record provides substantial evidence in support of the ALJ's decision to give Dr. Thwainey's opinions only partial weight." (ECF No. 16, PageID.842.)

After the Magistrate Judge went through that analysis, Abraham now says that the Magistrate Judge addressed the wrong argument. In her objection, she claims the Magistrate Judge "shift[ed] the inquiry away from the appropriate question." (ECF No. 17, PageID.854.) Her objection then says, "The MRI findings do not themselves require the imposition of any further limitations, and that is not plaintiff's argument. Instead, plaintiff is arguing that the MRI (and EMG) findings support the doctor's statement as to the required limitations, but the ALJ does not appear to have considered them in according the doctor's opinion only partial weight. *That* is plaintiff's argument, and the Magistrate Judge's Report and Recommendation fails to directly address it." (ECF No. 17, PageID.855.) Abraham adds, "The ALJ's decision not to accord a treating physician's opinion controlling weight must be based upon 'good reasons.'" (*Id.*) Her objection concludes by stating, "An analysis that ignores significant evidence cannot provide those reasons." (ECF No. 17, PageID.851.)

In this Court's opinion, the Magistrate Judge fairly construed Abraham's summary-judgment argument as an argument that the ALJ failed to comply with the substantive prong of the treating-source rule. And in her objection, Abraham does nothing to address the litany of record evidence cited by the Magistrate Judge that, in the Magistrate Judge's opinion at least, is contrary to Dr. Thwainey's extreme sitting, standing, and walking limitations. So, to the extent that Abraham's summary-judgment argument was that the ALJ did not comply with the substantive portion of the treating-source rule, Abraham has given the Court no reason to revisit the Magistrate Judge's analysis.

But, as noted, Abraham's objections state that "[t]he ALJ's decision not to accord a treating physician's opinion controlling weight must be based upon 'good reasons'" and that "[a]n analysis that ignores significant evidence cannot provide those reasons." (ECF No. 17, PageID.851.) So it appears that her argument now is about the procedural prong of the treating-source rule—i.e., that the ALJ failed to adequately explain why he assigned Dr. Thwainey's opinion partial weight.

Although an argument could be made that it was not the Magistrate Judge in her report, but instead Abraham in her objection, who shifted the treating-source argument, the Court will nonetheless address Abraham's "good reasons" argument *de novo*.

A good place to start is to recount, precisely, what the ALJ said. In assessing Dr. Thwainey's opinion, the ALJ stated, "The undersigned has considered the opinion of Dr. Thwainey, and affords it partial weight, as it is partially consistent with the overall evidence of record. Significantly, his assessed occasional postural activities and no climbing of ladders and scaffolds is supported by examinations indicating lumbar tenderness, reduced range of motion, decreased strength, diminished sensation, and an antalgic gait with the use of a cane (3F/7; 5F/5; 7F/3; 8F/3; 10F/37; 13F/3; 13F/11; 14F/24; 16F/3)." (PageID.50.) The ALJ continued, "However, Dr. Thwainey's assessment that the claimant could only sit, stand or walk for one hour each in a day is not consistent with other findings showing that, at times, the claimant had normal strength, full range of motion, normal extremities, and intact sensation (2F/11; 2F/14; 3F/7; 5F/5; 5F/11; 7F/3; 8F/3; 8F/12; 9F/19; 10F/25; 14F/4; 14F/24; 14F/28)." (PageID.50.) "Moreover," said the ALJ, "treatment notes often indicated the claimant had a normal gait without the use of an assistive device (5F/5; 5F/11; 8F/3; 8F/12; 9F/19; 15F/16; 16F/15)." (PageID.50.) "Accordingly," the ALJ concluded, "the undersigned gives partial weight to the opinion of Dr. Thwainey." (PageID.50.)

7

There is some merit to Abraham's claim that this explanation is inadequate. The Court has reviewed all the medical evidence, paying special attention to those records cited by the ALJ. The cited records are not entirely supportive of the ALJ's implication that Abraham had normal strength, range of motion, and gait. For instance, the ALJ cited "14F/24" and "14F/28." True, those treatment notes from Dr. Thwainey both say "Normal strength, sensation and reflexes throughout"; but Dr. Thwainey might have been referring to Abraham's cranial nerves, and even if not, he was only referencing neurologic functioning. (*See* PageID.684, 688.) And, more importantly, these records say "positive for back pain" and "LS spine pain." (PageID.684, 688.) And in one, Dr. Thwainey noted, Abraham "would like to be evaluated for marijuana use" for pain (PageID.684); and in the other, "[c]ontinue norco + Flexeril" (PageID.688). As other examples, the ALJ cited pages 9F/19 and 16F/15 of the record for the proposition that "treatment notes often indicated the claimant had a normal gait without the use of an assistive device." True, 9F/19 says, "She is able to ambulate without the use of any assistive devices"; but it also says, "gait and station is slow and antalgic in demeanor," "[t]he patient does hold her back in a guarded type position," and "[l]ow back pain 9/10 radiates to [both] legs with weakness." (PageID.534.) As for 16F/15, it does say, "Examination of gait and station is normal (Patient able to undergo exercise testing and/or participate in exercise program)"; but that statement is arguably boilerplate as it appears identically in multiple records and is in a laundry list of findings unrelated to the purpose of the visits. (*See* PageID.751, 755–756, 763–764.) Indeed, page 16F/15 is from Dr. Samuel—he only treated Abraham for carpal-tunnel syndrome, not her back. And, as Abraham argues in her objections, the above-quoted passage from the ALJ's narrative includes no reference to her MRI or EMGs.

Still, while the ALJ might have done better, the Court finds that the ALJ complied with the explanatory prong of the treating-source rule.

8

The prong's primary purpose is to prevent the disability claimant from being "bewildered." *Cole v. Astrue*, 661 F.3d 931, 937–38 (6th Cir. 2011). A claimant might well be confused as to why an ALJ, who is not a doctor, declined to accept the limitations provided by not just a doctor, but one who has treated the claimant for a long time. *See id.* So the procedural aspect of the treating-source rule requires an ALJ to give enough of an explanation to the claimant (and subsequent reviewing courts) to remove the confusion. *See id.*

Here, the ALJ's narrative narrowly clears that bar. The ALJ expressly noted that Dr. Thwainey had given the extreme limitation that Abraham could be upright only three hours of an eight-hour workday. (PageID.50.) The ALJ also noted that Dr. Thwainey thought that Abraham needed a cane for ambulation. (*Id.*) (In fact, Dr. Thwainey not only thought that Abraham needed a cane, but (perhaps mistakenly) indicated that Abraham could not ambulate without using two canes, two crutches, or a walker. (PageID.553.)) And some of the records the ALJ cited are at least debatably inconsistent with the extreme limitation of lying down five hours in an eight-hour workday. (*See* PageID.416 (noting "normal strength and tone" in lower extremities); PageID.563 (noting decreased range of motion in lower spine but no evidence of peripheral neuropathy); PageID.664 ("Back: . . . [range of motion] normal").) And some of the records the ALJ cited do indicate that Abraham was at times able to walk without a cane. (PageID.484 ("Gait – Normal"); PageID.534; PageID.731 ("patient is not using a cane"); PageID.764 ("Examination of gait and station is normal").) As for Abraham's claim that the ALJ's explanation for assigning Dr. Thwainey's opinion "partial weight" does not reflect that the ALJ "considered" the MRI and EMGs, the ALJ did acknowledge those three studies in the factual-summary portion of his narrative. (PageID.48–49.) True, a summary is not an analysis. But those studies do not obviously

support Dr. Thwainey's extreme sitting, standing, and walking limitations and so their omission from the analysis does not make the ALJ's explanation for assigning partial weight confusing.

In sum, the Court narrowly finds that a reasonable claimant and reviewing courts would be able to understand why the ALJ discounted Dr. Thwainey's opinion. The procedural aspect of the treating-source rule demanded no more. *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 786 (6th Cir. 2017) ("The point of the 'good reasons' rule is to permit meaningful review of the ALJ's decision and to ensure that a claimant is not 'bewildered' when an administrative bureaucracy tells him that he is not disabled.").

## IV.

For the reasons given, the Court OVERRULES Abraham's objections (ECF No. 17) and ACCEPTS the Magistrate Judge's recommendation (ECF No. 16). It follows that the Court GRANTS the Commissioner's motion for summary judgment (ECF No. 14), DENIES Abraham's (ECF No. 13), and AFFIRMS the Commissioner's disability determination.

SO ORDERED.

Dated: September 30, 2019

                              s/Laurie J. Michelson
                              LAURIE J. MICHELSON
                              UNITED STATES DISTRICT JUDGE

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 30, 2019.

                              s/Erica Karhoff
                              Case Manager to
                              Honorable Laurie J. Michelson